UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GLENN QUANTZ,

    Plaintiff,

        v.

GARY EDWARDS, NEIL McCLANAHAN, RAY HANSEN, DAN KIMBALL, BRAD WATKINS, PAUL COUNTS, THURSTON COUNTY, WILLIAM "BILL" KENNY and DEFENDANT DOES 1 through 5,

    Defendants.

Case No. C04-5737RJB

ORDER GRANTING IN PART AND DENYING IN PART GARY EDWARDS'S AND DAN KIMBALL'S MOTIONS FOR SUMMARY JUDGMENT AND GRANTING NEIL McCLANAHAN'S AND RAY HANSEN'S MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the court on defendants Gary Edwards, Neil McClanahan, Ray Hansen, Dan Kimball, William Kenny, and Thurston County's Motions for Summary Judgment (Dkts. 94, 100, 97, 92, 86). The court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

## I. PROCEDURAL BACKGROUND

In his amended complaint, Mr. Quantz alleges that defendants violated his (1) rights to free speech under the First Amendment of the United States Constitution and under the Washington Constitution; (2) rights to substantive due process under the Fourteenth Amendment of the United States Constitution and under the Washington constitution; (3) rights to Equal Protection under the Fourteenth Amendment of United States Constitution; (4) rights to Freedom of Association under the First and Fourteenth Amendments of the United States Constitution; he

ORDER - 1

1  also makes (5) a state law claim for wrongful discharge; and (6) a state law claim for defamation.
2  Dkt. 44.

3      Mr. Quantz names Thurston County and several individual defendants. Gary Edwards has
4  been the elected Sheriff of Thurston County since 1987 and was the incumbent Sheriff when Mr.
5  Quantz ran for Sheriff in 2002. Dkt. 95. Neil McClanahan is the Undersheriff of the Thurston
6  County Sheriff's Office. Dkt. 101. Many of Sheriff Edwards's responsibilities are delegated to
7  Undersheriff McClanahan. *Id.* Undersheriff McClanahan is in turn assisted by Deputy Chiefs,
8  including Ray Hansen, Deputy Chief of the Thurston County Sheriff's Operations Bureau. *Id.* The
9  Operations Bureau is comprised of two divisions. Captain Dan Kimball is the Captain of the
10  Detective Division. *Id.* William "Bill" Kenny was the Labor and Employee Relations Manager of
11  the Thurston County Human Resources Department.  Dkt. 32. His duties included negotiating
12  collective bargaining agreements and administering such agreements. *Id.* In 2003, he became the
13  director of the department. In 2004, he left employment with Thurston County and is now a
14  Human Resources Director for a city located in Washington State. Dkt. 39.

15      On November 17, 2005, defendants William "Bill" Kenny and Thurston County moved for
16  summary judgment. Dkt. 100. Counsel for plaintiff Quantz filed a late, over-length response with
17  an arguments section that made almost no reference to the supporting documentation filed with
18  the court and was nearly identical to a response brief filed in a companion case, even erroneously
19  misidentifying the plaintiff as Mr. Quantz. *See* Dkt. 109, Dkt. 105 at 18. The response brief was
20  accompanied by a declaration from Mr. Quantz's attorney, J.D. Smith, stating, "The facts asserted
21  in Plaintiff's Opposition to Defendants Thurston County and William Kenny's Motion for
22  Summary Judgment set for hearing on December 9, 2005, are true and correct to the best of my
23  knowledge." Dkt. 106. For reasons set forth in a previous court order striking certain portions of
24  another declaration of Mr. Smith, the court deemed the declaration insufficient to support the
25  factual allegations in the response.

26      In the interest of fairness to Mr. Quantz, the court issued an order permitting counsel for
27  Mr. Quantz to file another response brief that complied with local and federal rules and
28  affirmatively set forth facts creating an issue for trial. Dkt. 109. Counsel for Mr. Quantz filed an

additional response brief responding to all of the pending motions for summary judgment with a lengthier recitation of the facts and a largely identical arguments section. *See* Dkt. 105 at 11-26; Dkt. 114-1 at 15; Dkt. 114-2 at 13. The response brief was largely unhelpful to the court, failing to link the factual record to the allegations asserted in the amended complaint. In the interest of fairness to Mr. Quantz, the court culled through the record to assess the viability of all of Mr. Quantz's claims.

The parties stipulated to dismissal of all claims against Brad Watkins and Paul Counts. Dkt. 111. The parties further stipulated to dismissal of Mr. Quantz's state and federal freedom of speech claims, state substantive due process claim, and defamation claim as to defendants Gary Edwards, Neil McClanahan, Ray Hansen, and Dan Kimball. Dkt. 112. The parties stipulated to dismissal of Mr. Quantz's federal free speech claims as to defendants Neil McClanahan and Ray Hansen. Dkt. 117. Finally, the parties stipulated to dismissal of Mr. Quantz's federal association and substantive due process claims as against Dan Kimball. Dkt. 113.

## II. FACTUAL BACKGROUND

The following is a recitation of the relevant facts in the light most favorable to Mr. Quantz. On February 13, 1976, Mr. Quantz was charged with grand larceny. Dkt. 110-3, Exh. I. He pleaded guilty to petty larceny and received a deferred sentence and was ordered to serve ten days in jail. Dkt. 110-3, Exh. J, Dkt. 101-5, Exh. L.

Mr. Quantz applied for the position of Deputy Sheriff for the Thurston County Sheriff's Office ( the "Sheriff's Office") on February 19, 1986. Dkt. 101-5, Exh. N. The job application asks applicants, "Have you ever been convicted of a felony, gross misdemeanor or a misdemeanor other than a minor traffic offense?" Dkt. 101-5, Exh. N. Mr. Quantz checked "No" and did not write anything in the space provided for listing convictions. Dkt. 101-5, Exh. N. Similarly, Mr. Quantz was required to complete an employment standards form that asked about "[a]ny felony arrests or conviction[s]" and "arrests, misdemeanor or gross misdemeanor convictions (theft, DWI, disorderly conduct, etc.), and/or two or more moving violations in past 3 years." Dkt. 101-5, Exh. O. Mr. Quantz checked "No" in response to both queries. Dkt. 101-5, Exh. N at 7.

1    Mr. Quantz ran for the office of Thurston County Sheriff in 2002 against incumbent

2  Sheriff Edwards. Dkt. 101 at 3. In order to allow more time to campaign, Mr. Quantz resigned

3  from his position on the SWAT team. Dkt. 115-5 at 5.

4    Sheriff Gary Edwards learned of Mr. Quantz's criminal history in the Spring of 2002. Dkt.

5  115-6 at 9. He received a call from retired Olympia Police Department Detective Ron Schultz

6  who had read in the newspaper that Mr. Quantz was running for Sheriff and was concerned about

7  Mr. Quantz having a criminal history. Dkt. 115-6 at 9. During the same time period, Chief Ray

8  Hansen received an anonymous call alerting him that there was something of interest in Mr.

9  Quantz's background. Dkt. 101 at 4. Sheriff Edwards asked Undersheriff Neil McClanahan and

10 Chief Hansen whether they could verify what Mr. Schultz had told him. Dkt. 115-6 at 11.

11    On June 6, 2002, a newspaper article in the Tacoma News Tribune summarized Mr.

12 Quantz's criminal history. Dkt. 101, Exh. E. At a public forum in August of 2002, Sheriff

13 Edwards announced that Mr. Quantz was under an internal investigation. Dkt. 115-5 at 10.

14    Sheriff Edwards told Mr. Quantz that his criminal history and the truthfulness of his job

15 application would be looked into "not too much longer after the election was over and Mr.

16 Quantz was back." Dkt. 115-7 at 7. Sheriff Edwards told Mr. Quantz that the investigation would

17 likely lead to his termination. Dkt. 104 at 4. Undersheriff McClanahan delayed, until after the

18 sheriff's office election, an internal investigation into whether Mr. Quantz violated any rules or

19 standards by not disclosing his criminal history. Dkt. 101 at 11. Undersheriff McClanahan stated

20 in a declaration that he based this decision to delay the investigation on his belief that completing

21 the investigation before the Sheriff's election was held might undermine its validity and on his

22 desire to have the investigation conducted by an independent source. Dkt. 101 at 10-11. Sheriff

23 Edwards stated in his deposition that he begin an investigation or direct that an internal affairs

24 investigation be begun at that time "because Mr. Quantz had already announced his candidacy for

25 Sheriff and I didn't think it would be wise to look like I was objecting to him being a candidate

26 and running for Sheriff . . . ." Dkt. 115-7, at 13.  Sheriff Edwards made this decision after

27 discussing the matter with his administrative staff, including Undersheriff McClanahan, Chief

28 Hansen, and probably Captain Kimball. Dkt. 115-7 at 13-14. Chief Hansen's involvement in the

1    investigation was limited to giving his opinion that an investigation was warranted and to

2    preparing documents for the independent investigator. Dkt. 115-8 at 17. Mr. Kenny's involvement

3    was limited to giving his opinion that any investigation of Mr. Quantz should be delayed until after

4    the 2002 election and be conducted independently. Dkt. 32 at 3.

5         Sheriff Edwards was reelected on November 5, 2005. After the election, Undersheriff

6    McClanahan arranged for the independent internal investigation into Mr. Quantz's employment

7    application process. Dkt. 101 at 11. Undersheriff McClanahan provided formal notice of the

8    investigation to Mr. Quantz on March 11, 2003. Dkt. 101-11, Exh. X. Captain Annette Louie of

9    the King County Sheriff's Office conducted the investigation and recommended a finding of

10   "Unfounded." Dkt. 115-11, Exh, 11 at 15. Undersheriff McClanahan disagreed with the

11   methodology and thoroughness of the investigation but ultimately accepted the recommendation

12   that Mr. Quantz not be disciplined. Dkt. 101 at 12. The matter was dropped.

13        Mr. Quantz assisted in developing the Sex Offender Registration Unit ("SOR Unit") of the

14   Sheriff's Office. Dkt. 104 at 2. Mr. Quantz and another individual worked in the SOR Unit from

15   1991 to 1995, when Mr. Quantz requested reassignment because he was "having difficulty dealing

16   with the actual subject matter as well as the offenders themselves." Dkt. 104 at 3. The SOR Unit

17   was assigned one detective in 2002, and Chief Hansen and Captain Dan Kimball determined that a

18   second detective was needed to help with the heavy caseload. Dkt. 101 at 12. Undersheriff

19   McClanahan stated in a declaration that Chief Hansen and Captain Kimball determined that Mr.

20   Quantz would be the best choice for the SOR position because he was already well versed in the

21   case law and procedures, and that he would not require additional training.  Dkt. 101, at 13.

22   Undersheriff McClanahan concurred in the decision, which was ultimately made by Chief Hansen

23   and Captain Kimball. Dkt. 101 at 13.  Mr. Quantz stated that he was assigned to the SOR Unit in

24   January of 2003. Dkt. 104 at 4. This assignment did not affect Mr. Quantz's status, title, or base

25   pay. Dkt. 101 at 13.  Mr. Quantz is the only deputy to be reassigned to the SOR Unit. Dkt. 104 at

26   4.

27

28

ORDER - 5

1    Mr. Quantz stated in a declaration that, in January of 2003, Captain Kimball ordered him

2 "to have no contact or interaction with the press or I would be subject to immediate termination."

3 Dkt. 104 at 4.

4    In April of 2003, Mr. Quantz was one of five applicants for two openings on the Thurston

5 County SWAT team. Chief Hansen had the ultimate authority to appoint new members to the

6 SWAT team. As part of the selection process, a selection committee ranked applicants and

7 recommended which applicants should be appointed. Captain Pearsall, one of Sheriff Edwards's

8 supporters, was on the Oral Board. Dkt. 104 at 4. Captain Pearsall was not previously on the Oral

9 Board. Dkt. 104 at 4. Mr. Quantz was ranked fourth out of five applicants, and Chief Hansen

10 accepted this recommendation and chose applicants who scored more favorably than Mr. Quantz.

11 Dkt. 98 at 6, Dkt. 98-3, Exh. B.

12    In June of 2004, Mr. Quantz was hired by the Washington State Department of Natural

13 Resources and resigned from the Sheriff's Office in July of 2004. Dkt. 101 at 13-14.

14    The defendants separately move for summary judgment. Mr. Kenny also moves for

15 summary judgment on his counterclaim for sanctions under Federal Rule of Civil Procedure 11

16 and 28 U.S.C. § 1927.  Because Mr. Quantz responds to all motions indiscriminately, the court

17 will address the motions together.

18                                    **III. DISCUSSION**

19    **A. SUMMARY JUDGMENT STANDARD**

20    Summary judgment is proper only if the pleadings, depositions, answers to interrogatories,

21 and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

22 to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.

23 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails

24 to make a sufficient showing on an essential element of a claim in the case on which the

25 nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

26 There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

27 rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

28 *Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative

1   evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. Pro. 56(e). Conversely, a

2   genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed

3   factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v.*

4   *Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical*

5   *Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

6         The determination of the existence of a material fact is often a close question. The court

7   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

8   e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect.*

9   *Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of

10  the nonmoving party only when the facts specifically attested by that party contradict facts

11  specifically attested by the moving party. The nonmoving party may not merely state that it will

12  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

13  to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson*, *supra*).

14  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be

15  "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

16      **B. SECTION 1983 CLAIMS**

17      Section 1983 provides as follows:

18          Every person who, under color of any statute . . . of any State . . . subjects, or causes to
            be subjected, any citizen of the United States or other person within the jurisdiction
19          thereof to the deprivation of any rights, privileges, or immunities secured by the
            Constitution and laws, shall be liable to the party injured.
20

21  42 U.S.C. § 1983. To "subject" another to the deprivation of a constitutional right means to

22  personally participate in the deprivation by performing an affirmative act, participating in

23  another's affirmative act, or failing to perform an act required by law. *See Gilbrook v. City of*

24  *Westminster*, 177 F.3d 839, 854 (9th Cir. 1999). Defendants may also be liable for causing an

25  individual to be subjected to a constitutional deprivation by setting in motion a series of acts by

26  others that the defendants knew or reasonably should have known would cause a violation of the

27  plaintiff's constitutional rights. *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997).

28

1    Under the doctrine of qualified immunity, government officials are immune from suit
2  unless their actions violate clearly established law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).
3  Qualified immunity is the right to be immune from suit. *Id.* at 526. The question of whether a
4  defendant is entitled to qualified immunity must be resolved early in the proceedings to preserve
5  this right. *Id.* Determining whether a defendant is immune from suit is a two-step inquiry: First,
6  the plaintiff must demonstrate a violation of a constitutional right. The inquiry ends here if the
7  plaintiff does not satisfy this prong. To determine whether this prong is satisfied, the court views
8  the allegations in the light most favorable to the injured party. *Saucier v. Katz*, 533 U.S. 194, 201
9  (2001). In other words, the court asks whether taking all the allegations as true demonstrates a
10  violation of a right secured by the Constitution.

11    Second, the plaintiff must demonstrate that the constitutional right was clearly established.
12  *Id.* A right is clearly established if "it would be clear to a reasonable officer that his conduct was
13  unlawful in the situation he confronted." *Id.* at 202. Plaintiffs may not overcome qualified
14  immunity by invoking abstract, general, but clearly recognized rights. *Anderson v. Creighton*, 483
15  U.S. 635, 639 (1987). Rather, the right must recognized in a particularized way so that the
16  government officer may reasonably anticipate its violation. *Id.* at 639-40. If both prongs of the
17  analysis are satisfied, the defendant is entitled to qualified immunity and summary judgment of
18  dismissal is appropriate.

19              **1. First Amendment Claim for Retaliation for Engaging in Protected Speech**

20    Mr. Quantz contends that the "Defendants have punished Plaintiff as a result of Plaintiff's
21  political speech and speech on matters of public concern." Dkt. 44 at 8.  In his complaint, Mr.
22  Quantz alleges that he "made public statements in support of his candidacy and critical of the
23  incumbent sheriff and his administration."  Dkt. 44 at 4.  The complaint is unsworn and can
24  therefore not be considered to meet the evidentiary standard for opposing a motion for summary
25  judgment under Fed.R.Civ.P. 56.  See Fed.R.Civ.P. 56(e).

26    The only speech Mr. Quantz identifies as the basis for the defendants' retaliation against
27  him is his announcement that he was going to run for office. Dkt. 104 at 3. A liberal reading of
28  the complaint and Mr. Quantz's responses to the pending motions for summary judgment

ORDER - 8

1  suggests that he contends that he suffered the following in retaliation for that statement: he was

2  subjected to a delay in the internal investigation of the truthfulness of his employment

3  applications, he was denied reassignment to the SWAT team, he was reassigned to the SOR Unit,

4  his retaliation complaints were not investigated, he was ordered not to speak to the press, he was

5  constructively discharged, and he was sabotaged after he secured new employment. Dkt. 114 at 4-

6  14. Pursuant to the stipulated dismissals, this claim is asserted against only Sheriff Edwards,

7  Captain Kimball, Mr. Kenny, and Thurston County. *See* Dkt. 117, 118, 119.

8  ### a. Qualified Immunity

9  Sheriff Edwards, Captain Kimball, and Mr. Kenny all contend that they are entitled to

10  qualified immunity. Dkt. 94 at 8, Dkt. 92 at 7, Dkt. 86 at 11.

11  To determine whether these defendants are entitled to qualified immunity on this claim, the

12  court must first determine whether this allegation amounts to a constitutional violation and then

13  whether the constitutional right was clearly established at the time in the situation the officers

14  confronted. *Saucier*, 533 U.S. at 201.

15  ### i. Violation of a Constitutional Right

16  In order to state a claim under 42 U.S.C. § 1983 for violation of the First Amendment,

17  plaintiff must demonstrate that (1) his speech was protected; (2) the employer took an "adverse

18  employment action" against him; and (3) his speech was a "substantial or motivating" factor for

19  the adverse employment action. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).

20  *Protected Speech: Announcement of Candidacy for Sheriff.* Mr. Quantz alleges that he

21  was retaliated against for announcing his candidacy for Sheriff. Dkt. 104 at 3. This statement is a

22  matter of public concern and therefore falls within the purview of the First Amendment. *See*

23  *Brewster v. Board of Educ.*, 149 F.3d 971, 978 (9th Cir. 1998) (political speech is of public

24  concern and therefore protected by the First Amendment). The statement only merits

25  constitutional protection if it survives the *Pickering* balancing test, however. *Id.* at 979. The test

26  weighs the employee's interest in commenting on matters of public concern and the employer's

27  interest in promoting the efficiency of the workplace. *Id.* The defendants have not demonstrated

28  that their interests were harmed by the announcement, and the court should therefore decline as a

1  matter of law to hold that Mr. Quantz's announcement was unprotected.  Assuming that Mr.

2  Quantz's announcement that he was going to run for Sheriff was protected speech under the First

3  Amendment, the issue is whether Mr. Quantz was allegedly subjected to adverse employment

4  actions, which are identified as follows:

5      *Adverse Employment Action:  Delay in Internal Investigation.*  An employment action is

6  adverse if it is reasonably likely to deter the plaintiff and others from engaging in protected

7  speech. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003). Mr. Quantz

8  alleges that he suffered several adverse employment actions, beginning with the delay of the

9  internal investigation.

10     At the outset, it is important to note that Mr. Quantz does not contend that Captain

11  Kimball was involved in the delay and does not dispute Captain Kimball's contention that he

12  played no role in the investigation. Dkt. 93 at 2. This allegation is therefore only relevant to Mr.

13  Quantz's claim against Sheriff Edwards and Mr. Kenny.  *See* Dkt. 95 at 7 (Sheriff Edwards

14  determined that the investigation should be delayed, and discussed the matter with his

15  administrative staff); Dkt. 32 at 3 (Mr. Kenny advised that the investigation be delayed). On its

16  own, a delay in the internal investigation causes no cognizable injury and does not constitute an

17  adverse employment action.  Accordingly, Mr. Quantz has not stated a claim that Mr. Kenny

18  retaliated against plaintiff by delaying the investigation.

19     However, when the delay of the internal investigation is coupled with an announcement by

20  Sheriff Edwards to the public that Mr. Quantz was under investigation, the delay in the internal

21  investigation could be considered a deterrent to Mr. Quantz and others to refrain from running for

22  Sheriff for fear that the public would view the fact of an investigation negatively, regardless of the

23  results.

24     Sheriff Edwards contends that he only spoke about the investigation and the truthfulness

25  of Mr. Quantz's job application after the information had already appeared in the media. Dkt.

26  115-7 at 5. He further contends that he did not tell the media that Mr. Quantz was under

27  investigation during the election and that it is his belief that the investigation had not yet

28  commenced during that time period. Dkt. 115-7 at 10. Mr. Quantz contends that Sheriff Edwards

ORDER - 10

1  announced that Mr. Quantz was under an internal investigation during the spring of 2002, before

2  the election. Dkt. 115-5 at 10. Viewed in the light most favorable to Mr. Quantz, this allegation is

3  sufficient to allege a constitutional claim that only Sheriff Edwards, not Mr. Kenny, violated Mr.

4  Quantz's right to Freedom of Speech by retaliating against him by delaying the internal

5  investigation until the election was over.

6         *Adverse Employment Action:  Denial of Reassignment to SWAT Team.*  Mr. Quantz also

7  contends that he was denied reassignment to the SWAT team in retaliation for his political speech.

8  Chief Hansen had the final authority to appoint officers to the SWAT team. Dkt. 98 at 6. The free

9  speech claim against Chief Hansen has previously been dismissed by stipulation of the parties.

10  Mr. Quantz does not refute Captain Kimball's contention that he was not involved in this

11  decision. *See* Dkt. 93 at 2-3. He does not dispute Sheriff Edwards's contention that he was not

12  consulted on the decision to deny Mr. Quantz reinstatement to the SWAT team and does not

13  demonstrate that Sheriff Edwards knew or should have known about the decision. Dkt. 95 at 3;

14  *see Taylor v. List*, 880 F.2d 1040, 1046 (9th Cir. 1989) ("A supervisor is only liable for

15  constitutional violations of his subordinates if the supervisor participated in or directed the

16  violations, or knew of the violations and failed to act to prevent them. There is no *respondeat*

17  *superior* liability under section 1983."). There is no evidence that Mr. Kenny was involved in this

18  employment action. Dkt. 32 at 3. While Mr. Quantz contends that Captain Pearsall was on the

19  selection committee and was a supporter of Sheriff Edwards, this fact is inapposite to determining

20  whether Captain Kimball and Sheriff Edwards personally participated in denying Mr. Quantz's

21  reinstatement to the SWAT team. Plaintiff has not alleged a constitutional claim that he was

22  retaliated against for his announcement that he would run for Sheriff by Chief Hansen's decision

23  not to appoint him to the SWAT team.

24         *Adverse Employment Action:  Reassignment to SOR Unit.*  Mr. Quantz contends that

25  reassigning him to the SOR Unit in January of 2003 constitutes an adverse employment action.

26  Mr. Quantz does not demonstrate that Sheriff Edwards participated in the decision or that he

27  knew or should have known that the transfer was going to occur and should have prevented it.

28  *See Taylor*, 880 F.2d at 1046 (No liability unless supervisor participated in constitutional

1    violation, directed it, or knew about it and should have taken preventative steps). He also fails to

2    demonstrate any involvement by Mr. Kenny. *See* Dkt. 32 at 3. This action applies only to Captain

3    Kimball, who contends that he is authorized to make such reassignments by the Sheriff's Office

4    leadership and that the transfer did not affect Mr. Quantz's rank or compensation. Dkt. 92 at 4.

5    The fact that the reassignment did not affect Mr. Quantz's rank and compensation is not

6    dispositive of the question of whether it constitutes an adverse employment action. *See Ray v.*

7    *Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000) (later transfer constitutes an adverse

8    employment action); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (transfer of job

9    duties constitutes adverse employment action). It is sufficient that Mr. Quantz and others would

10   be deterred from engaging in protected activity by such a reassignment. *See* Dkt. 104 at 3 (Mr.

11   Quantz did not enjoy working in the SOR Unit), Dkt. 116-1, Exh. 11 at 6 (Captain Kimball

12   knows of officers who do not want to work in the SOR Unit).  Based upon the facts in the record,

13   Mr. Quantz's allegations against only Captain Kimball are sufficient to allege an adverse

14   employment action based upon Captain Kimball's decision to transfer Mr. Quantz to the SOR

15   unit.

16        *Adverse Employment Action:  Failure to Investigate Complaints.*  The amended complaint

17   also contends that Mr. Kenny "failed to investigate [] serious claims made by [Mr.] Quantz and

18   three other Thurston County Deputies." Dkt. 44 at 7. This allegation is both unsworn and

19   conclusory and does not create a genuine dispute of material fact.

20        *Adverse Employment Action:  Order Not to Speak to the Press.*  Mr. Quantz contends that

21   he was ordered not to speak to the press. Again, Sheriff Edwards was not consulted about this

22   decision, and Mr. Quantz does not demonstrate a basis for imposing liability on Sheriff Edwards.

23   Dkt. 95 at 3. Similarly, there is no evidence that Mr. Kenny was involved. Mr. Quantz contends

24   that "[d]enial of [Mr.] Quantz's right to speak with the media rests with him [Sheriff Edwards] as

25   the official who delegated authority to Kimball" but does not establish that Sheriff Edwards

26   actually has such authority and delegated it to Captain Kimball. Dkt. 114-1 at 12. There is

27   insufficient evidence to suggest that Sheriff Edwards is responsible for this employment action.

28

1    As explained *infra*, employees have a right to talk to the press, although not necessarily

2    about all employment matters. There is a dispute over whether Captain Kimball directed Mr.

3    Quantz not to speak to the press at all or whether he ordered Mr. Quantz not to speak to the

4    press about his reassignment to the SOR. Dkt. 104 at 4; Dkt. 93 at 7. Viewing the allegations in

5    the light most favorable to Mr. Quantz, being prohibited from speaking with the press is an

6    adverse employment action.  Mr. Quantz has alleged a violation of a constitutional right against

7    only Captain Kimball for ordering plaintiff not to speak to the press.

8         *Adverse Employment Action:  Sabotage of New Employment*.  Mr. Quantz contends that

9    someone from the Sheriff's Office who is not a party to this case called his new employer to

10   sabotage him. Dkt. 114-1 at 13. Mr. Quantz does not demonstrate that Sheriff Edwards, Captain

11   Kimball, or Mr. Kenny participated in or knew about this phone call. Mr. Quantz has therefore

12   failed to show facts that would state a constitutional claim that Mr. Kenny violated his

13   constitutional rights by sabotaging Mr. Quantz's employment after left the Sheriff's department.

14        *Adverse Employment Action: Constructive Discharge*.  Mr. Quantz also contends that he

15        was constructively discharged:

16        Over the next twelve to eighteen months the work environment continued to spiral down
          and be a tremendous source of stress to me. I suffered physical and mental symptoms. I
17        knew I had to get out of the Sheriff's office as I couldn't take the day to day abuse and
          stress.
18
19   Dkt. 104 at 5. This statement is conclusory and devoid of any facts demonstrating that the

20   working environment at the Sheriff's Office became "extraordinary and egregious" so as to

21   constitute a constructive discharge. *See Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir.

22   2000).  Mr. Quantz has therefore failed to show facts that would state a constitutional claim that

23   defendants took an adverse employment action against him amounting to constructive discharge.

24        *Retaliation as Motivating Factor.*  Mr. Quantz may satisfy this requirement by

25   demonstrating a close proximity in time between his campaign statements and the retaliatory

26   employment actions such that a retaliatory motive may reasonably be inferred; by offering

27   evidence of the employer's expressed opposition to the speech; or by showing that the legitimate

28   reasons offered by the defendant were untrue and pretextual. *Coszalter*, 320 F.3d at 977. All of

     Mr. Quantz's allegations appear to rely upon the close proximity, a few months, between the

1  campaign and the employment actions. This proximity is sufficient to meet Mr. Quantz's burden

2  at this stage, for the Freedom of Speech and/or Equal Protection allegations against Sheriff

3  Edwards and Captain Kimball, as discussed above, for which qualified immunity does not apply.

4       The only constitutional claims that are sufficient to allege a violation of a constitutional

5  right to Freedom of Speech are Mr. Quantz's claims that (1) Sheriff Edwards violated his right to

6  Freedom of Speech by retaliating against him by delaying the internal investigation until the

7  election was over; (2) Captain Kimball violated his constitutional right to Freedom of Speech by

8  retaliating against him by reassigning him to the SOR unit; (3) Captain Kimball violated his

9  constitutional right to Freedom of Speech by retaliating against him by ordering him not to speak

10  to the press.

### ii. Clearly Established

12       Having determined that Mr. Quantz succeeded in alleging denial of his constitutional

13  rights as identified above, the court proceeds to the second stage of the qualified immunity

14  analysis and determines whether the constitutional right at issue is clearly established such that a

15  reasonable government officer would understand the conduct at issue to be unlawful.

16       Without question, the right to freedom of speech is clearly established. The relevant

17  inquiry at this stage, though, is whether a reasonable government official in 2002 or 2003 would

18  appreciate that retaliating against an employee's announcement that he was running for political

19  office is unconstitutional. Even when particularized in this way, there is nothing novel or

20  unexpected about the rights claimed by Mr. Quantz. *See Anderson*, 483 U.S. at 640 (the

21  constitutional right at issue must be contoured and particularized). A reasonable governmental

22  officer would understand that taking these actions would violate the Constitution. *See Coszalter*,

23  320 F.3d at 979 ("The relevant acts of the defendants took place between 1996 and 2000. Thus,

24  at the time defendants acted, both the constitutional protection of employee speech and a First

25  Amendment cause of action for retaliation against protected speech were clearly established.").

26  The court should therefore hold that Sheriff Edwards and Captain Kimball are not entitled to

27  qualified immunity on Mr. Quantz's First Amendment Freedom of Speech claims, as identified

28  above in the first prong of the *Saucier* test.  Sheriff Edwards and Captain Kimball are entitled to

1  qualified immunity as to Mr. Quantz's other First Amendment Freedom of Speech claims because

2  Mr. Quantz has not alleged violation of a constitutional right as to those claims.  Mr. Kenny is

3  entitled to qualified immunity as to all of Mr. Quantz's First Amendment Freedom of Speech

4  claims.

5  **b. Municipal Liability**

6  Mr. Quantz contends that the County violated his constitutional rights because it did not

7  have a policy protecting political candidates from retaliation. Dkt. 114-1 at 13. Mr Quantz also

8  contends that the county is liable for Sheriff Edwards's violation of his rights. The County asks

9  the court to enter judgment in its favor on these claims, arguing that it cannot be held liable for §

10  1983 violations under a *respondeat superior* theory and that Mr. Quantz has failed to establish

11  that the County has a policy, practice, or custom of violating civil rights in the manner alleged in

12  the complaint.

13  The language of § 1983 is expansive and does not expressly incorporate common law

14  immunities. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 637 (1980). Municipalities are

15  subject to suit under § 1983. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978).

16  Municipalities are not liable merely for employing tortfeasors, and *respondeat superior* is an

17  insufficient basis for establishing municipal liability. *Id.* Rather, plaintiffs must establish that a

18  policy or custom of the municipality caused the constitutional injury. *Leatherman v. Tarrant*

19  *County Narcotics Intelligence & Coordination*, 507 U.S. 163, 166 (1993). This requirement

20  distinguishes acts of the municipality from acts of municipal employees. *Christie v. Iopa*, 176 F.3d

21  1231, 1235 (9th Cir. 1999). The custom allegedly causing the rights violation need not receive

22  municipal ratification in order to serve as the basis for a claim under § 1983. *Monell*, 436 U.S. at

23  691. Plaintiffs contending that they were singled out for unusual treatment do not establish the

24  presence of a longstanding practice or custom. *Christie*, 176 F.3d at 1235.

25  Mr. Quantz's first basis for municipal liability is that "[t]he county failed to establish even

26  minor safeguards to protect employee-candidates for public office from suffering retaliation at the

27  hands of the incumbent or the employee-supporters of the incumbent's [sic]." Dkt. 114-1 at 13.

28  This amounts to a claim that Thurston County had a policy of failing to create a policy, but

1    Mr. Quantz offers no legal authority suggesting that municipal liability can be premised upon a

2    lack of a policy or custom.

3          Mr. Quantz's second basis for municipal liability is that the County is liable for Sheriff

4    Edwards's violation of his rights. Ordinarily, isolated instances of rights violations are insufficient

5    to establish a § 1983 claim. *Christie*, 176 F.3d at 1235. Mr. Quantz appears to argue that Sheriff

6    Edwards had final policymaking authority and therefore fits into an exception. *Id.* at 1235; Dkt.

7    105 at 10 ("The sheriff has absolute authority over the appointment and control of his deputies.").

8    Whether a government official has final policymaking authority is a legal question of state law. *Id.*

9    at 1236. If officials' decisions are constrained by policies not of their making, they do not have

10   final policymaking authority. *Id.* at 1238.

11         That an official has final policymaking authority in some areas does not dispose of the

12   issue. Rather, the plaintiff must establish that the official had final policymaking authority to carry

13   out the activity that caused the rights violation:

14         The fact that a particular official-even a policymaking official-has discretion in the exercise
           of particular functions does not, without more, give rise to municipal liability based on an
15         exercise of that discretion. The official must also be responsible for establishing final
           government policy respecting such activity before the municipality can be held liable.
16

17   *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986). An official's exercise of discretion,

18   even if by authority of a municipality's policymaker, does not render the official a policymaker

19   herself. For example, an official's authority to exercise discretion when hiring and firing does not

20   render her a policymaker in the area of employment. *See id.* at 484 n.12.

21         For reasons explained in this order on Sheriff Edwards's motion for summary judgment, at

22   Pages 10-11, the only remaining viable claim against Sheriff Edwards is that he delayed the

23   internal investigation of Mr. Quantz in retaliation for Mr. Quantz opposing him in the campaign

24   for Sheriff. Mr. Quantz appears to base his claim of municipal liability on only this claim. *See* Dkt.

25   114-2 at 2. In order for Thurston County to be held liable for the delay, Mr. Quantz must

26   demonstrate that Sheriff Edwards was the final policymaker in the area of internal investigations.

27         Mr. Quantz cites RCW 36.28.010, which provides that the Sheriff is the chief executive

28   office and executor of the peace of the county but is silent about the Sheriff's authority over

ORDER - 16

1   internal procedures. *See* RCW 36.28.010. Chapter 26.3 of the Sheriff's Office Standard Operating

2   Procedures similarly fails to support municipal liability:

> The Undersheriff is responsible for all internal affairs functions for the Sheriff's Office,
> with the authority to report to the Sheriff. Division Chiefs may assign investigations and
> may determine that an internal investigation complaint is justified. Completed
> investigations will channel to the Sheriff through the Undersheriff.

6   Dkt. 101- 5, Exh. W. Mr. Quantz has, at most, demonstrated that Sheriff Edwards has the

7   authority to review investigations and that investigations will be channeled to him. Mr. Quantz has

8   not demonstrated–anywhere in the record–that Sheriff Edwards has the authority to make policies

9   regarding internal investigations, and municipal liability on this basis would be inappropriate.

10      It is unclear whether Mr. Quantz also bases his municipal liability upon the authority of

11  Undersheriff McClanahan, Chief Hansen, and Captain Kimball. He has similarly failed to establish

12  that these defendants were responsible for establishing policies regarding internal investigations.

13  The court should therefore hold that Mr. Quantz has failed to establish a basis for municipal

14  liability for violation of his First Amendment Freedom of Speech claims; those claims should be

15  dismissed.

16                          **c. Summary Judgment Discussion**

17

18      Having held that Sheriff Edwards and Captain Kimball are not entitled to qualified

19  immunity on Mr. Quantz's free speech claims, the court must determine whether there are genuine

20  issues of material fact precluding summary judgment. As noted above, the elements for

21  establishing a claim for violation of First Amendment rights under Section 1983 are (1) protected

22  speech and an (2) adverse employment action (3) motivated by the protected speech. *Coszalter*,

23  320 F.3d at 973. The first and second elements appear to be straightforward: Mr. Quantz's

24  political speech was protected; there are issues of fact as to whether the delay in the investigation,

25  reassignment to the SOR Unit, and order that Mr. Quantz not speak to the press are, arguably,

26  adverse employment actions. The primary issue is, therefore, whether Mr. Quantz has raised a

27  genuine dispute of material fact as to whether the adverse employment actions were motivated by

28  his protected speech.

        Mr. Quantz does not specifically address this aspect of the analysis, but he presumably

ORDER - 17

1    relies upon the proximity in time between the alleged adverse employment actions and his political

2    campaign. In the Title VII context, the Supreme Court has recognized that the proximity in time

3    must be "very close" when offered as the sole evidence of causation. *Clark County School Dist. v.*

4    *Breeden*, 532 U.S. 268, 273 (2001). There is no *per se* rule determining whether the temporal

5    proximity is close enough in a given case, and the question is usually considered one of fact for

6    the jury to determine. *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 979 (9th Cir.

7    2002). All of Mr. Quantz's allegations appear to rely upon the close proximity, a few months,

8    between the campaign and the employment actions. This proximity is sufficient to meet Mr.

9    Quantz's burden at this stage.

10           Viewed in the light most favorable to Mr. Quantz, the decision to delay the investigation

11   was ongoing and close in time to Mr. Quantz's protected speech. The reassignment to the SOR

12   Unit and the accompanying instruction not to speak to the press occurred in January of 2003, two

13   months after the Sheriff's Office election in November of 2002. Also, viewed in the light most

14   favorable to Mr. Quantz, Captain Kimball knew about the need to increase the staffing of the

15   SOR Unit for a year but waited until the month after the election to reassign Mr. Quantz. Dkt. 93

16   at 6, Dkt. 116-1 at 13-14. The court cannot determine, as a matter of law, that these time periods

17   are insufficiently close and should therefore deny the motions for summary judgment on the free

18   speech claims against Sheriff Edwards and Captain Kimball.

                              **2. Substantive Due Process**

20           Mr. Quantz contends that "[t]hrough their arbitrary, capricious, and retaliatory practices,

21   Defendants' conduct contravened the doctrine of substantive due process as guaranteed by the

22   Fourteenth Amendment." Dkt. 44 at 8. Pursuant to the stipulated dismissals, this claim is asserted

23   only against Sheriff Edwards, Undersheriff McClanahan, and Chief Hansen. *See* Dkt. 118, 113.

25           The defendants contend that they are entitled to qualified immunity for any of their

26   employment-related decisions. Dkt. 94 at 8, Dkt. 100 at 26, Dkt. 97 at 11. As explained above,

27   the court looks first to whether Mr. Quantz has successfully alleged a constitutional violation and

28

1   then to whether the constitutional right was clearly established at the time it was violated in order

2   to determine whether the defendants are entitled to qualified immunity. *Saucier*, 533 U.S. at 201.

3        If true, Mr. Quantz's allegations do not amount to a constitutional violation.  Mr.

4   Quantz's responses do not clarify the factual bases for his substantive due process claim.  Mr.

5   Quantz makes conclusory allegations without citing to the factual record: "It is palpably arbitrary

6   for a sheriff to severely discipline a twenty five year law enforcement veteran without a

7   constitutionally adequate investigation or opportunity to be heard, for the sole reason that the

8   Plaintiff criticized his superior by referring to him by mister instead of using his title." Dkt. 114-2

9   at 9. Mr. Quantz does not specify the severe discipline to which he refers. He contends that the

10  "Defendants conspired to strip the Plaintiff of his command duties and his dignity to impact the

11  election results." Dkt. 114-2 at 10. Mr. Quantz does not illustrate what duties he was denied or

12  what actions the defendants took to rob him of his dignity. Finally, he asserts that "Edwards'

13  employment standards and criteria amount to his personal system to exact punishment to those

14  who might challenge him." Dkt. 114-2 at 10.  Mr. Quantz has not pleaded a procedural due

15  process claim and, at any rate, has not supported such a claim with any facts concerning

16  employment standards and criteria. *See* Dkt. 44. Finally, Mr. Quantz has not alleged that Sheriff

17  Edwards, Undersheriff McClanahan, and Chief Hansen personally participated in or caused a

18  violation of his constitutional rights to substantive due process.

19        To the extent that Mr. Quantz is basing his substantive due process claim on the same

20  facts as his freedom of speech claim, the claim must be brought under the First Amendment.

21  When a plaintiff's claim falls within the purview of both substantive due process and of a

22  constitutional amendment, the claim is analyzed under the applicable amendment. *Armendariz v.*

23  *Penman*, 75 F.3d 1311, 1319-20 (9th Cir. 1996). This principle has been applied to overlapping

24  substantive due process and First Amendment claims. *See Hufford v. McEnaney*, 249 F.3d 1142,

25  1151 (9th Cir. 2001). The court should therefore decline to separately analyze Mr. Quantz's First

26  Amendment retaliation claim under substantive due process and dismiss this claim as to all

27  defendants. Because Mr. Quantz has failed to allege that the defendants violated a right secured to

28  him by the Constitution, the court should hold that defendants Sheriff Edwards, Undersheriff

McClanahan, and Chief Hansen are entitled to qualified immunity on the substantive due process claim.

### 3. Equal Protection

Mr. Quantz contends that his right to equal protection as guaranteed under the Fourteenth Amendment was violated by Sheriff Edwards, Undersheriff McClanahan, Chief Hansen, and Captain Kimball. *See* Dkt. 118. Mr. Quantz apparently bases his equal protection claim on Captain Kimball's requirement that he not speak with the press. Dkt. 114-2 at 5 ("Quantz was ordered not to engage in protected conduct, while Defendants did not subject other employees to the same treatment."); Dkt. 104 at 4 ("I was ordered by Dan Kimball to have no contact or interaction with the press or I would be subject to immediate termination.").

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). To state an equal protection claim under 42 U.S.C. § 1983, plaintiff must demonstrate that the defendants acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998). Rather than arguing that he is part of a protected class, Mr. Quantz asserts that he was subjected to selective enforcement. Dkt. 114-2 at 6. The standard for selective enforcement cases is that (1) other similarly situated people are generally not sanctioned and (2) the decision to sanction Mr. Quantz was based upon impermissible grounds such as race, religion or the exercise of constitutional rights. *See Church of Scientology v. C.I.R.*, 823 F.2d 1310, 1321 (9th Cir. 1987). As with any other claim brought under Section 1983, Mr. Quantz must demonstrate that the defendants personally participated in or caused a deprivation of a constitutional right. *Gilbrook*, 177 F.3d at 854.

To determine whether the defendants are entitled to qualified immunity on this claim, the court first determines whether Mr. Quantz has stated a constitutional violation and then determines whether the right violated was clearly established. *Saucier*, 533 U.S. at 201. Mr. Quantz has only alleged that Captain Kimball instructed him not to speak to the press after being

ORDER - 20

1    reassigned to the SOR Unit in early 2003. Dkt. 104 at 4. He does not contend that the other

2    defendants personally participated in this incident, instructed Captain Kimball to convey this

3    order, or knew that Captain Kimball had made such an order. *See Taylor*, 880 F.2d at 1046 (A

4    supervisor must participate in, direct, or know of subordinates' violations and fail to prevent them

5    in order to be liable.). Mr. Quantz has therefore not alleged a constitutional claim that Sheriff

6    Edwards, Undersheriff McClanahan, and Chief Hansen violated his Fourteenth Amendment rights

7    to Equal Protection; these defendants are entitled to qualified immunity on the Equal Protection

8    claim.

9        Mr. Quantz has successfully stated a claim for violation of his Fourteenth Amendment

10   right to Equal Protection against Captain Kimball.  If Mr. Quantz's allegations are true, Captain

11   Kimball instructed only Mr. Quantz not to talk to the press and that he would be terminated for

12   doing so on the basis that Mr. Quantz had been politically active for a candidate other than Sheriff

13   Edwards. Dkt. 104 at 4.

14       The right of employees to speak to the press is clearly established. Captain Kimball refutes

15   this conclusion on two grounds. First, he contends that employees' free speech rights are rarely, if

16   ever, clearly established. Dkt. 92 at 16. Captain Kimball cites *Gilbrook*, 177 F.3d at 867, for this

17   proposition. In *Gilbrook*, the Ninth Circuit noted that employees' free speech rights are ordinarily

18   not clearly established because the test for determining whether an employee's speech is deserving

19   of constitutional protection involves a fact-intensive balancing of competing interests. *Gilbrook*,

20   177 F.3d at 867. The issue facing the *Gilbrook* court was whether plaintiff had been retaliated

21   against for making a statement to the press that was damaging to his employer. *See id.* at 865.

22   This case involves an alleged blanket prohibition of any contact with the press. A reasonable

23   governmental official would appreciate that employees have a generic right to speak to the press.

24       Second, Captain Kimball contends that the right is not clearly established because there is

25   a split among the circuits as to whether claims for violation of free speech may be brought as

26   violations of equal protection. Dkt. 92 at 19. The circuits are split as to whether claims that may

27   be cast as both First Amendment or equal protection violations must be brought as First

28   Amendment claims. *Kirby v. City Of Elizabeth City*, 388 F.3d 440, 447 (4th Cir. 2004) ("The

1  claims based on the allegation that Kirby was treated differently in retaliation for his speech are, at

2  their core, free-speech retaliation claims that do 'not implicate the Equal Protection Clause.'");

3  *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) ("To the extent Watkins contends that

4  she was dismissed because of her expressive activity, that claim arises under the First

5  Amendment."); *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("we know of no court that has

6  recognized a claim under the equal protection clause for retaliation following complaints of racial

7  discrimination"); *Gehl Group v. Koby*, 63 F.3d 1528, 1538 (10th Cir.1995), *impliedly overruled*

8  *on other grounds by Currier v. Doran*, 242 F.3d 905, 916 (10th Cir. 2001), ("Plaintiffs' equal

9  protection claim is essentially one for selective prosecution, claiming that they were singled out

10 for prosecution because of their exercise of a fundamental right. . . . Such differential treatment

11 could implicate equal protection concerns, just as it could First Amendment concerns.");

12 *Thompson v. City of Starkville*, 901 F.2d 456, 468 (5th Cir.1990) ("Thompson attempts to create

13 a classification for equal protection purposes based solely on his exercise of his first amendment

14 right to free speech. . . . His recourse is solely under the first amendment.");[1] *Vukadinovich v.*

15 *Bartels*, 853 F.2d 1387, 1391-92 (7th Cir. 1988) ("Here, plaintiff is not claiming that he was

16 classified on the basis of some forbidden characteristic, only that he was treated differently

17 because he exercised his right to free speech. We believe this is best characterized as a mere

18 rewording of plaintiff's First Amendment-retaliation claim.").

19        The parties have not cited, and the court's research has not revealed, a Ninth Circuit case

20 holding that claims for violations of First Amendment rights may not be brought as equal

21 protection claims. *But see Gilbrook*, 177 F.3d at 870 ("[W]e do not address the more interesting

22 (and difficult) legal question posed by defendants: Can differential treatment on the basis of

23 expressive activity give rise to an equal protection claim, separate and apart from a claim of First

24 Amendment retaliation?"). Absent authority dictating otherwise, the court should hold that Mr.

25

26        [1] The court notes that the holding in *Thompson* was made "[i]n view of the fact that Thompson's right to

27 free speech under the first amendment is essentially an individual right and that Thompson makes no claim that
   anyone other than he was similarly treated," whereas Quantz contends that other Sheriff's Office employees were

28 similarly retaliated against for their political activities. *Thompson*, 901 F.2d at 468; Dkt. 105 at 8, Dkt. 106-6, Exh.
   17 (Marty Gunderson declaring that he suffered retaliation for supporting Sheriff Edwards's challenger , Dkt. 106-
   7, Exh. 18 (Steve Brigham declaring that he suffered retaliation for supporting Sheriff Edwards's challenger).

1   Quantz's equal protection claim is not foreclosed by the fact that it raises First Amendment

2   concerns. Regardless of whether it is pleaded under the First Amendment, the equal protection

3   clause, or both; the right to be free from differential treatment solely because of one's protected

4   speech is clearly established.

5        Having determined that Captain Kimball is not entitled to qualified immunity on the claim

6   that he violated Mr. Quantz's right to equal protection under the law if he told Mr. Quantz not to

7   speak to the press, the court must determine whether Captain Kimball is entitled to summary

8   judgment on this claim. The court should deny Captain Kimball's motion for summary judgment

9   because there is a genuine issue of material fact; did Captain Kimball instruct Mr. Quantz "to have

10  no contact or interaction with the press or [he] would be subject to immediate termination" or did

11  he "advise[] him that he was not to speak to the press regarding his reassignment [to the SOR

12  Unit]?" Dkt. 104 at 4, Dkt. 93 at 7. This issue should be resolved at trial.

### 4. Freedom of Association

15       Neither of the response briefs addresses Mr. Quantz's First Amendment Freedom of

16  Association claim. Mr. Quantz has therefore not satisfied his burden to come forth with "specific

17  facts showing that there is a genuine issue for trial," and the motion should be granted on this

18  claim. Fed. R. Civ. Pro. 56(e).

### C. STATE CONSTITUTIONAL CLAIMS

20       There is no state statute comparable to Section 1983 entitling plaintiffs to damages for

21  violations of rights arising under the Washington State Constitution. *Blinka v. Washington State*

22  *Bar Ass'n*, 109 Wn. App. 575, 591 (2001). Furthermore, Section 1983 itself does not entitle

23  plaintiffs to recover for violations of state constitutional rights. *Barry v. Fowler*, 902 F.2d 770,

24  772 (9th Cir. 1990). The motion should be granted with respect to Mr. Quantz's state

25  constitutional claims against Mr. Kenny and Thurston County.

26

27

28

### D. COMMON LAW WRONGFUL DISCHARGE AND DEFAMATION

The response briefs fail to address Mr. Quantz's common law discharge claim against any of the defendants. The response brief also makes no mention of the defamation claims against Mr. Kenny and Thurston County. Mr. Quantz has therefore not satisfied his burden to come forth with "specific facts showing that there is a genuine issue for trial," and the motion should be granted on these claims. Fed. R. Civ. Pro. 56(e).

### E. SANCTIONS

Mr. Kenny counterclaims for sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 on the grounds that the claims against him are frivolous and were made in bad faith, and he moves for summary judgment on his counterclaim. Dkt. 86 at 21. The counterclaim for Rule 11 sanctions fails to comply with Federal Rule 11(c)(1)(A). Therefore, Mr. Kenny is not entitled to summary judgment on his Rule 11 claims.

The motion for excessive costs under Section 1927 is premised upon "the conclusory nature of the Amended Complaint" and the "groundless, unreasonable and frivolous nature of this lawsuit." Dkt. 86 at 21. Discounting the unsworn allegation that Mr. Kenny failed to investigate Mr. Quantz's retaliation complaints, the only allegation to pertaining to Mr. Kenny is that he suggested that the internal investigation be delayed. It is difficult to see how this could sufficiently support each of Mr. Quantz's eight causes of action against Mr. Kenny. Section 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Because it only applies to the multiplication of proceedings, Section 1927 cannot be used to impose sanctions for the filing of a complaint. *In re Keegan Management Co., Securities Litigation*, 78 F.3d 431, 435 (9th Cir. 1996). Insofar as it is based upon the filing of a complaint that lacked a factual foundation, Mr. Kenny has not shown that he is entitled to summary judgment on his counterclaim for Section 1927 sanctions.

1    Mr. Kenny's request for sanctions is also apparently based upon Mr. Quantz's amendment

2    of his complaint and his continuation of his case against Mr. Kenny despite lacking a factual

3    foundation for his claims. Mr. Kenny filed a motion for summary judgment that the court

4    recharacterized as a Rule 12(b)(6) motion to dismiss because the motion relied upon the

5    complaint's failure to make any specific allegations about Mr. Kenny. Dkt. 41. The motion was

6    granted in this respect, and Mr. Quantz was granted leave to amend his complaint. *Id.* Mr. Quantz

7    amended the complaint to add two allegations implicating Mr. Kenny. First, he added an

8    allegation that Mr. Kenny "failed to investigate these serious claims made by Mr. Quantz." Dkt.

9    44 at 7. This allegation is unsworn and has not been raised in any either of Mr. Quantz's

10   responses to the motions for summary judgment. Second, Mr. Quantz added an allegation that

11   Mr. Kenny recommended that the Sheriff delay the internal investigation. *Id.* Mr. Kenny contends

12   that this allegation "reli[es] solely on information in the declaration submitted on behalf of Mr.

13   Kenny in support of his first motion for summary judgment." Dkt. 86 at 21.

14   Section 1927 sanctions must be supported by bad faith, meaning that the attorney

15   knowingly or recklessly makes a frivolous argument or makes a meritorious argument for the

16   purpose of harassing the opponent. *Id.* at 436. Though weak, the argument that Mr. Kenny

17   violated Mr. Quantz's constitutional rights and contributed to his constructive discharge by

18   recommending that the internal investigation be delayed is sufficient to state an issue of fact as to

19   whether Section 1927 sanctions should be awarded.  While it is wholly unclear how Mr. Quantz's

20   defamation claim could be leveled against Mr. Kenny based solely upon his expressed advice to

21   delay the investigation, there is at least an issue of fact as to whether the claim constitutes

22   recklessness or bad faith. Summary judgment on Mr. Kenny's counterclaim for sanctions under 28

23   U.S.C. § 1927 should therefore be denied, and the counterclaim should proceed.

24   **F. MOTION TO STRIKE**

25

26   In their reply brief, the Sheriff's Office defendants move to strike the declaration of Chief

27   Penny Harrington on several grounds. While the court is not persuaded that the report meets the

28   requirements set forth in Federal Rule of Evidence 702; *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.* 509 U.S. 579 (1993); or *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S.

137 (1999); the probative value was minimal and of little use to the court in analyzing the issues in these motions.  The motion to strike Chief Harrington's declaration should be denied.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendant Gary Edwards' Motion for Summary Judgment (Dkt. 94) is **GRANTED IN PART** as follows: Mr. Quantz's Substantive Due Process, Equal Protection, Freedom of Association, and state law claims for wrongful discharge and defamation against Sheriff Edwards are **DISMISSED**. Defendant Neil McClanahan's Motion for Summary Judgment (Dkt. 100) is **GRANTED**, and the claims against Undersheriff McClanahan are **DISMISSED**. Defendant Ray Hansen's Motion for Summary Judgment (Dkt. 97) is **GRANTED**, and the claims against Chief Hansen are **DISMISSED**. Defendant Dan Kimball's Motion for Summary Judgment (Dkt. 92) is **GRANTED IN PART** as follows: Mr. Quantz's state law claims for wrongful discharge and defamation against Captain Kimball is **DISMISSED**. The Motion for Summary Judgment on Behalf of Defendants Thurston County and William Kenny (Dkt. 86) is **GRANTED,** and the claims against Thurston County and William Kenny are **DISMISSED**.

Defendant Gary Edwards' Motion for Summary Judgment (Dkt. 94) and Defendant Dan Kimball's Motion for Summary Judgment (Dkt. 92) are **DENIED** with regard to the following claims, and these claims may proceed: (1) Mr. Quantz's claim that Sheriff Edwards violated his right to Freedom of Speech by retaliating against him by delaying the internal investigation until the election was over; (2) Mr. Quantz's claim that Captain Kimball violated his constitutional right to Freedom of Speech by retaliating against him by reassigning him to the SOR unit; (3) Mr. Quantz's claim that Captain Kimball violated his constitutional right to Freedom of Speech by retaliating against him by ordering him not to speak to the press; and (4) Mr. Quantz's claim that Captain Kimball violated his constitutional right to Equal Protection by ordering him not to speak to the press.  William Kenny's cross-motion for summary judgment on his counterclaim

1  (Dkt. 86) is **DENIED**, and the counterclaim may proceed. The motion to strike chief Harrington's

2  declaration is **DENIED**.

3          The Clerk is directed to send uncertified copies of this Order to all counsel of record and

4  to any party appearing *pro se* at said party's last known address.

5          DATED this 21st day of December, 2005.

6

7

8                                        Robert J. Bryan

9                                        United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER - 27