UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GLENN QUANTZ,

Plaintiff,

v.

GARY EDWARDS, NEIL McCLANAHAN, RAY HANSEN, DAN KIMBALL, BRAD WATKINS, PAUL COUNTS, THURSTON COUNTY, WILLIAM "BILL" KENNY,

Defendants.

Case No. C04-5737RJB

ORDER ON MOTIONS

This matter comes before the Court on Defendant Edwards' Renewed Motion for Judgment *Non Obstante Veredicto* Pursuant to Fed. R. Civ. P. 50(b) or for New Trial Pursuant to Fed. R. Civ. P. 59 (Dkt. 238), Plaintiff's Motion for Attorneys' Fees and Costs under 42 U.S.C. § 1988 (Dkt. 240), Plaintiff's Motion to Dismiss Defendant William "Bill" Kenney's Counterclaim for 28 U.S.C. § 1927 Sanctions (Dkt. 207), Motion of Defendant William Kenney for an Award of Attorney's Fees and Expenses (Dkt. 231), and Motion of Defendants for Attorneys' Fees and Expenses Due to Mistrial Caused by Plaintiff's Attorney (Dkt. 242). The Court has reviewed all documents filed in support of and in opposition to these motions, the events of the trial, the entire file, and is fully advised.

## I. PROCEDURAL and FACTUAL BACKGROUND

On November 1, 2004, Quantz filed a Complaint against the above named Defendants, alleging violations of his rights of free speech and substantive due process under the state and

federal constitutions, equal protection under the federal constitution, and freedom of association under the federal constitution. Dkt. 1. He also made state law claims for wrongful discharge and defamation. *Id.* On May 31, 2005, claims against Defendant William Kenny, a Thurston County Human Resources Department employee, were dismissed without prejudice, and Quantz was permitted to file an amended complaint. Dkt. 41. In his Amended Complaint, Quantz made claims against all Defendants for violations of his rights of free speech and substantive due process under the state and federal constitutions, equal protection under the federal constitution, and freedom of association under the federal constitution. Dkt. 44. He also made claims for wrongful discharge and defamation. *Id.*

Defendant Kenny filed a counterclaim against Quantz pursuant to 42 U.S.C. §§ 1983 and 1988, and RCW 4.84.185, alleging Quantz's claims in the original and amended complaints against him were "vexatious, frivolous, or brought merely to harass" him. Dkt. 60. The parties agreed, and the Court ordered, that the Kenny claim would be resolved by motion practice rather than trial.

Parties stipulated to the dismissal of various parties and claims. *See e.g.* Dkt. 111-113. Pursuant to multiple summary judgment motions, only three claims proceeded to trial: Quantz's free speech claims against Defendants Edwards and Kimball, and his equal protection claim against Defendant Kimball. Dkt. 128. The claims against Kimball were dismissed pursuant to Fed. R. Civ. P. 50(a) on the fourth day of trial, and only the free speech claim against Edwards proceeded to the jury. Dkt. 206. At trial the following facts were proffered as support for the remaining claim.

Quantz, an employee of the Thurston County Sheriff's office, announced in the fall of 2001 that he was running for Sheriff of Thurston County against the incumbent Sheriff Gary Edwards. In the spring of 2002, the Sheriff's office decided that discrepancies on Quantz's employment application necessitated an internal investigation. Dkt. 239-5, at 12-13. A dismissed defendant, Undersheriff Neil McClanahan, testified that he made the decision to delay the internal investigation until after the fall 2002 election. *Id.* at 2. Edwards concurred with the Undersheriff's decision to delay the internal investigation. *Id.* Quantz testified that Edwards, in

the summer of 2002, announced in a public forum that Quantz was under investigation. Dkt. 255-2, at 10. Edwards was reelected as the Sheriff of Thurston County in the fall of 2002. After difficulty in securing an out-of-county investigator (due to no fault of the Defendants), the internal investigation of Quantz's employment application was conducted by the King County Sheriff's office in the spring and summer of 2003. Dkt. 239-3, at 2.

Quantz's claim against Edwards, as articulated in the Summary Judgment Order (Dkt. 128, at 26), was as follows: "Mr. Quantz's claim that Sheriff Edwards violated his right to Freedom of Speech by retaliating against him by delaying the internal investigation until the election was over."

On February 21, 2006, trial in this matter began. Dkt. 190. The following day, a motion for mistrial was granted based on Quantz's counsel's failure to abide by the Court's rulings regarding the parameters of the case. Dkt. 191. On February 27, 2006, retrial began. Dkt. 195. On March 7, 2006, the jury returned a verdict for Quantz against Edwards and awarded Quantz $4,250 in damages. Dkt. 224.

## III. DISCUSSION

The Court will address the pending motions in the following order: (A) Defendant Edwards' Renewed Motion for Judgment *Non Obstante Veredicto* Pursuant to Fed. R. Civ. P. 50(b) or for New Trial Pursuant to Fed. R. Civ. P. 59 (Dkt. 238), (B) Plaintiff's Motion for Attorneys' Fees and Costs under 42 U.S.C. § 1988 (Dkt. 240), (C) Plaintiff's Motion to Dismiss Defendant William "Bill" Kenney's Counterclaim for 28 U.S.C. § 1927 Sanctions (Dkt. 207), Motion of Defendant William Kenney for an Award of Attorneys' Fees and Expenses (Dkt. 231), and (D) Motion of Defendants for Attorneys' Fees and Expenses Due to Mistrial Caused by Plaintiff's Attorney (Dkt. 242).

### A. MOTION FOR JUDGMENT *NON OBSTANTE VEREDICTO*

A court may overturn a jury's verdict by granting a Rule 50 motion only if a party has been fully heard on an issue and there is no legally sufficient basis for a reasonable jury to find for that party on that issue. *City Solutions Inc. v. Clear Channel Communications,* 365 F.3d 835, 839 (9th Cir. 2003) (*quoting Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149, (2000))

(*internal quotations omitted*). All evidence in the record is to be reviewed, drawing all reasonable inferences in favor of the non-moving party. *Id.* The standard for granting a judgment as a matter of law under Fed. R. Civ. P. 50 is identical to that for granting a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250 (1986).

Edwards argues that he is entitled to qualified immunity and that there was no legally sufficient basis for a reasonable jury to find for Quantz. Dkt. 238. This opinion will first address Edwards' qualified immunity claim and then will discuss the sufficiency of the evidence proffered at trial to support Quantz's claim.

1. Qualified Immunity

Edwards contends that he is entitled to qualified immunity on the one claim upon which Quantz prevailed. That claim, that Edwards was liable to Quantz for violating his federal free speech rights, was premised on 28 U.S.C. § 1983.

Section 1983 provides as follows:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To"subject" another to the deprivation of a constitutional right means to personally participate in the deprivation by performing an affirmative act, participating in another's affirmative act, or failing to perform an act required by law. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 854 (9th Cir. 1999). Defendants may also be liable for causing an individual to be subjected to a constitutional deprivation by setting in motion a series of acts by others that the defendants knew or reasonably should have known would cause a violation of the plaintiff's constitutional rights. *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997).

Under the doctrine of qualified immunity, government officials are immune from suit unless their actions violate clearly established law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Qualified immunity is the right to be immune from suit. *Id.* at 526. The qualified immunity defense is not waived or lost if a case proceeds to trial. *Wilson v. City of Boston*, 421 F.3d 45, 53 (1st Cir. 2005).

Determining whether a defendant is immune from suit is a two-step inquiry: first, the plaintiff must demonstrate a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The inquiry ends here if the plaintiff does not satisfy this prong. *Id.* To determine whether this prong is satisfied, the court views the allegations in the light most favorable to the injured party. *Id.* In other words, the court asks whether, taking all the allegations as true, the plaintiff demonstrates a violation of a right secured by the Constitution.

Second, the plaintiff must demonstrate that the constitutional right was clearly established. *Id.* A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Plaintiffs may not overcome qualified immunity by invoking abstract or general rights. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Rather, the right must be recognized in a particularized way so that the government officer may reasonably anticipate its violation. *Id.* at 639-40. Although the official action does not have to have previously been held unlawful, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640. As a result, qualified immunity operates to protect reasonable mistakes as to what the law requires. *Saucier* at 205.

a. *Violation of a Constitutional Right*

The core of Plaintiff's free speech claim is that he was retaliated against for announcing his candidacy for Sheriff. *See e.g.* Dkt. 104 at 3. Announcing one's candidacy for Sheriff is a matter of public concern and therefore falls within the purview of the First Amendment. *See Brewster v. Board of Educ.*, 149 F.3d 971, 978 (9th Cir. 1998) (political speech is of public concern and therefore protected by the First Amendment). The jury considered the fact that Edwards concurred in his undersheriff's decision to delay an internal investigation of Quantz until after the election as evidence of unconstitutional retaliation. As explained below in section 2.b., however, even viewing the evidence introduced at trial in a light most favorable to Quantz, a reasonable jury could not have found a violation of Quantz's free speech rights based on Edwards' decision to delay the internal investigation. Quantz has failed to demonstrate a violation of a constitutional right. Edwards is entitled to qualified immunity based on the first prong of the *Saucier* test.

However, even assuming Quantz had stated a violation of a constitutional right, as

discussed below, that right was not clearly established.

b. *Constitutional Right Clearly Established*

Under the second prong of the *Saucier* test, Quantz must demonstrate that his free speech right was clearly established. *Saucier*, 533 U.S. at 201. While, generally, it is clearly established that a public official can not retaliate against an employee for exercising the right to run for office, properly particularized, the relevant inquiry at this stage is whether a reasonable government official would appreciate that deciding to delay an internal investigation until after an election would result in a violation of Quantz's free speech rights. Particularized in this way, a reasonable governmental official in Edwards' place could not have realized that his actions were unlawful. Based on the evidence produced at trial, Edwards was faced with a no win situation: either he concurred with his undersheriff's decision to delay the investigation until after the election (and, as it turns out, be accused of retaliation) or he could have ordered Quantz be immediately investigated (and be accused of retaliation). In light of all the evidence admitted at trial, it is now abundantly clear that Edwards' concurrence with the decision to delay the internal investigation was not "obviously inconsistent" with Quantz's free speech right. Existing law would not have made it clear that Edwards' conduct in deciding to delay an internal investigation violated "existing constitutional norms," any more than proceeding with the investigation would have violated such norms. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065-66 (9th Cir. 2006)(noting alleged conduct need not have been previously and explicitly deemed unconstitutional, but existing case law must have made it clear that the conduct violated constitutional norms).

The Court recognizes that the opinion denying summary judgment on Edwards' qualified immunity claim could be construed as having come to a different conclusion as to this second element. Dkt. 128, at 14 ("a reasonable governmental officer would understand that taking 'these' actions would violate the Constitution"). However, upon examining the only remaining factual basis for the claim (decision to delay the investigation), without the multiple argued other bases for the claims before it on summary judgment (denied reassignment to the SWAT team, assignment to the SOR, order not to speak to the press, etc.) the Court is satisfied that Edwards is

entitled to qualified immunity.

During the trial, Quantz repeatedly raised the fact that the collective bargaining agreement required that internal investigations be "timely." *See e.g.* Dkt. 239-5, at 15. Even if the collective bargaining agreement was violated by delaying the investigation, this does not establish that Edwards had notice that he was violating Quantz's constitutional free speech rights. Moreover, testimony at trial indicated that preparation for the investigation, and the investigation, took eight months. (After the election in November of 2002, it was four months before an outside investigator from King County was secured. The Notice of Investigation was issued in March of 2003, and the investigation was completed in July of 2003 (*See Trial Exhibit 13*) - a total of eight months.) It is pure speculation that, had Edwards decided to immediately begun preparation for the investigation in the spring of 2002, the investigation would have been completed before the election.

Quantz put substantial emphasis at trial on Edwards' statement, made months after the decision to delay the investigation, that Quantz was "under investigation." The claim that Edwards violated Quantz's constitutional rights by announcing at a community forum that Quantz was under investigation did not survive summary judgment and was not a separate claim at trial. Arguably, if such a statement was made, it was a dirty campaign trick. It was not, however, in and of itself, a constitutional violation.

Considering the evidence at trial, Quantz is unable to overcome Edwards' qualified immunity because he did not show that he had a clearly established right to be free from the delay of an internal investigation due to his announcement of his candidacy. Even if Edwards were not entitled to qualified immunity, Edwards argues that there was insufficient evidence to support the one claim upon which Quantz prevailed.

2. Sufficiency of the Evidence

a. *Standard*

A court may overturn a jury's verdict by granting a Rule 50 motion only if a party has been fully heard on an issue and there is no legally sufficient basis for a reasonable jury to find for that party on that issue. *City Solutions Inc.,* at 839. Quantz presented his case to the jury and so was

fully heard on his First Amendment claim. The relevant inquiry is whether there was no legally sufficient basis for a reasonable jury to find for Quantz on his First Amendment claim that Edwards violated his free speech rights when he concurred with the decision to delay the internal investigation.

b. *Evidence of § 1983 First Amendment Violation at Trial*

Under 42 U.S.C. § 1983, for violation of the First Amendment, Quantz must demonstrate that (1) his speech was protected; (2) the employer took an "adverse employment action" against him; and (3) his speech was a "substantial or motivating" factor for the adverse employment action. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). Accordingly, the jury received the following instruction:

> Instruction No. 17: The plaintiff has the burden of proving all of the following elements by a preponderance of the evidence:
>
> (1) the acts of the defendant in regard to delaying the employment application internal investigation were intentional;
> (2) the acts of the defendant in regard to delaying the employment application internal investigation were under color of law;
> (3) a substantial or motivating factor in the acts of the defendant in regard to delaying the employment application internal investigation was retaliation for plaintiff announcing his candidacy for the office of Thurston County Sheriff; and
> (4) delaying the employment application internal investigation was an adverse employment action.
>
> If you find that each of the elements on which the plaintiff has the burden of proof has been proven, your verdict should be for the plaintiff, unless the defendant has proved by a preponderance of the evidence that the same action would have occurred even in the absence of any retaliatory motive.
>
> If the plaintiff has failed to prove any of the elements above, or if the defendant has proved by a preponderance of the evidence that the same action would have occurred even in the absence of any retaliatory motive, your verdict should be for the defendant.

Dkt. 222.

Parties do not dispute that Quantz's announcement that he was running for Sheriff constituted protected speech under the First Amendment. Therefore, the first element of the test was satisfied. However, defendants argue in their motion that Quantz failed to provide evidence to establish that delaying the employment application investigation was an adverse employment

action or that a substantial or motivating factor in Edwards' decision to delay the investigation was retaliation for Quantz announcing his candidacy. Dkt. 238 at 8-19.

i. *Second Contested Element: Adverse Employment Action*

An employment action is adverse if it is reasonably likely to deter the plaintiff and others from engaging in protected speech. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003). Accordingly, the jury was given Instruction No. 12: "An action is an *adverse employment* action if it is reasonably likely to deter employees from engaging in protected activity." Dkt. 222. The jury also was instructed that,

> The defendant, and his staff, had a right to conduct the employment application internal investigation of plaintiff and to determine the timing of when the internal investigation should be conducted, except that the defendant could not delay the investigation if a substantial or motivating factor in his decision to delay the investigation was retaliation for plaintiff's announcement of his candidacy for election to the office of Thurston County Sheriff.

*Id.* Instruction No. 8.

Quantz did not offer any direct or circumstantial evidence that the decision to delay the employment application investigation constituted an adverse employment action. Based on the above jury instruction, the jury was not to consider whether the investigation itself was proper, but only whether the Quantz proved by a preponderance of the evidence that delaying the investigation was an adverse employment action (motive will be dealt with below). There was no evidence in the record that the decision to delay the investigation was more adverse than a decision to proceed with the investigation immediately. Given the fact that Edwards had the right to conduct the investigation, Quantz failed to provide any evidence from which a jury could conclude, given the choices, to delay or proceed immediately, that the decision to delay internal investigation would be reasonably likely to deter other employees from running for office.

Quantz argues that

> When coupled with the delay of the internal investigation, the announcement by the Sheriff to the public that the plaintiff was under an internal investigation becomes a deterrent to the plaintiff and others to refrain from running against Sheriff Edwards for fear that the public would view the fact of an investigation negatively. Because the results of the investigation would necessarily also be delayed, the public would not have the benefit of knowing the results of the investigation, thereby leaving a cloud of suspicion over the head of any potential opponent of the Sheriff.

Dkt. 255-1, at 8. Quantz's argument hinges on the fact that the investigation was made public. However, the only action disputed as unconstitutional was the timing of the investigation, not whether the fact of the investigation became public. There was no evidence in the record from which the jury could have concluded that timing of the investigation constituted an adverse employment action. This is particularly true where the evidence at trial indicated that the eight months it took to prepare for, and complete, the investigation may not have lapsed by the time of the election even if the Sheriff had decided not to delay the internal investigation until after the election.

ii. *Third Contested Element: Motivation*

The third element Quantz must demonstrate under 42 U.S.C. § 1983 for violation of the First Amendment is that his speech was a "substantial or motivating" factor for the adverse employment action. *Coszalter*, at 973. A plaintiff may satisfy this requirement by demonstrating a close proximity in time between his campaign statements and the retaliatory employment action such that a retaliatory motive may reasonably be inferred by: 1) offering evidence of the employer's expressed opposition to the speech; or 2) by showing that the legitimate reasons offered by the defendant were untrue and pretextual. *Id.* at 977. Quantz's evidence on this element was extraordinarily thin. However, because the evidence was insufficient on the second element, this opinion need not discuss the third contested element.

After reviewing all of the evidence admitted at trial, the Court concludes that there was insufficient evidence to support the jury's verdict on the one claim upon which Quantz prevailed.

3. Conclusion on Motion for Judgment *Non Obstante Veredicto*

Defendant Edwards' Motion for Judgment *Non Obstante Veredicto* (Dkt. 238-1) should be granted. Edwards is entitled to qualified immunity because it would not be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Moreover, given the evidence at trial, there is no legally sufficient basis for a reasonable jury to find that the

decision to delay the election constituted an adverse employment action. Edwards' alternative motion for a new trial should be denied as moot.[1]

**B. QUANTZ'S MOTION FOR ATTORNEYS' FEES AND COSTS**

Quantz moves for attorneys' fees and costs pursuant to 42 U.S. C. § 1988 as the prevailing party. Dkt. 204-1. Edwards' motion for Judgment *Non Obstante Veredicto* should be granted as to the only claim on which Quantz prevailed at trial. Quantz's motion for attorneys' fees and costs should be denied as moot. In any event, Quantz's fee request was grossly excessive and did not provide the Court with the necessary reliable information from which to set reasonable fees.

**C. KENNEY'S COUNTERCLAIM**

Kenny now moves for "judgment awarding him attorney's fees and costs incurred on his behalf of the defense of this action since its inception pursuant to RCW 4.84.185, 42 U.S.C. §§ 1983 and 1988, and alternatively, for the attorney's fees and costs incurred on his behalf in defense of this action since the filing of the Amended Complaint pursuant to 28 U.S.C. § 1927." Dkt. 231, at 4.

1. <u>RCW 4.84.185</u>

RCW 4.84.185 provides:

> In any civil action, the court having jurisdiction may, upon written findings by the judge that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense. This determination shall be made upon motion by the prevailing party after a voluntary or involuntary order of dismissal, order on summary judgment, final judgment after trial, or other final order terminating the action as to the prevailing party. The judge shall consider all evidence presented at the time of the motion to determine whether the position of the nonprevailing party was frivolous and advanced without reasonable cause. In no event may such motion be filed more than thirty days after entry of the order.
>
> The provisions of this section apply unless otherwise specifically provided by statute.

RCW 4.84.185 "permits the court to award reasonable attorney fees in *any* civil action, upon

---

[1]In nearly 37 years as a trial judge, this is only the second time in memory the undersigned has granted a judgment NOV. This judge does not make it a practice of hoping that the jury will cure any judicial mistakes, and takes responsibility here for the error in letting the case go to the jury.

written findings that the action is frivolous in its entirety and was advanced without reasonable cause." *Reid v. Dalton*, 124 Wash. App. 113, 125 (2004)(*citing Biggs v. Vail,* 119 Wash.2d 129, 133-34, 830 P.2d 350 (1992))(*emphasis in original*). The Court cannot say, based upon all the evidence, that this action was "frivolous in its entirety." Kenny should not be awarded attorney's fees and costs pursuant to this statute.

2. Award Under 42 U.S.C. § 1988 and/or 28 U.S.C. § 1927

Pursuant to 42 U.S.C. § 1988 "a district court may award attorneys' fees to a prevailing defendant in a civil rights case if the plaintiff's claims are 'unreasonable, frivolous, meritless, or vexatious.'" *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998)(*quoting Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421(1978)). To determine whether the plaintiff's claims are sufficiently meritless to justify a fee award to the defendant, the court considers whether claims are frivolous and lack foundation, regardless of the plaintiff's subjective good faith in bringing such claims. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980). Examples of such claims are those for which reasonable inquiry was not made and which are insufficient as a matter of law, *Margolis,* at 854, those invoking causes of action that do not provide liability against the defendants, *Morse v. North Coast Opportunities, Inc.,* 118 F.3d 1338, 1343 (9th Cir. 1997), those seeking money damages from immune defendants, *Franceschi v. Schwartz*, 57 F.3d 828, 832 (9th Cir. 1995), and those with "no evidence" supporting them, *Evers v. County of Custer*, 745 F.2d 1196, 1199 (9th Cir. 1984). Furthermore, a prevailing party is entitled to fees arising from the preparation of a motion for fees. *See Margolis*, 140 F.3d at 855.

Section 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Because it only applies to the multiplication of proceedings, Section 1927 cannot be used to impose sanctions for the filing of a complaint. *In re Keegan Management Co., Securities Litigation*, 78 F.3d 431, 435 (9th Cir. 1996). Section 1927 sanctions "must be supported by a finding of subjective bad faith." *Id.* (*citing New Alaska Development Corp. v. Guetschow,* 869 F.2d 1298, 1306 (9th Cir.1989)).

> Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass. Thus, while it is true that reckless filings may be sanctioned, and nonfrivolous filings may also be sanctioned, reckless nonfrivolous filings, without more, may not be sanctioned.

*Id*. (*internal quotations and citations omitted*).

The initial claims against Kenny were dismissed on May 31, 2005, because Quantz failed to allege any facts which would support them. Dkt. 41, at 4. On June 14, 2005, Quantz amended the complaint, adding two allegations implicating Kenny. Dkt. 44. First, he added an allegation that Kenny "failed to investigate these serious claims made by Quantz." *Id*. at 7. This allegation is unsworn. Second, he added an allegation that Kenny recommended that the Sheriff delay the internal investigation. *Id*. On December 21, 2005, Kenny was dismissed from this action as a result of his summary judgment motion. Dkt. 128. The allegations (and the record) were insufficient to support any of the claims made against Kenny. *Id.* This Court noted that "though weak, the argument that Mr. Kenny violated Quantz's constitutional rights and contributed to his constructive discharge by recommending that the internal investigation be delayed was sufficient to state an issue of fact as to whether Section 1927 sanctions should be awarded." *Id*. at 25.

At this stage, the evidence before the Court indicates that the excess costs, expenses, and attorneys' fees should be awarded against Quantz's attorney for the multiplication of proceedings after October 18, 2005, because at that point it became apparent that the claims against Kenny were without merit and frivolous. Quantz and his attorney acknowledge that they failed to depose Kenny or propound discovery requests to him after the Amended Complaint was filed. Dkt. 233. Additionally, only a few questions regarding Kenny's involvement were asked during the depositions that were taken on October 17th and 18th of 2005. Dkt. 232-2 and 232-3. Those questions further clarified that there was no basis to keep Kenny in the suit. *Id*. At the October 18, 2005 deposition, Edwards was asked: "did you ever have any conversations with Bill Kenny regarding Mr. Quantz and the allegation that he falsified his employment application?" Edwards answers: "I don't believe so. Actually, I have never figured out why he's involved in this." Dkt. 232-2, at 2-3. Likewise, on October 17, 2005, Remi Hansen, at his deposition, was asked, "do you remember having any conversations with Bill Kenny regarding Glen Quantz?" Dkt. 232-3, at

2. Hansen answers, "Well, I think I may have had a conversation or two with him while this was ongoing, meaning the IA process. He wanted to know the status and if it had been forwarded and, you know, that kind of general information." *Id*. He is also asked if Bill Kenny ever made any recommendations to him regarding the internal affairs investigation of Quantz. *Id*. Hansen answered, "Not that I specifically recall. Well, I think he may have said to me, '[h]andle it like you would in any other IA that you hand over to another agency,' or some words to that effect. But I don't recall anything else." *Id*. Without question, at this point in the proceedings, October 18, 2005, Quantz's attorney should have acted to dismiss Kenny if he had no plan for further investigation.

Quantz and his attorney argue that they did not multiply the proceedings because Quantz was willing to enter into a voluntary stipulated dismissal. Dkt. 233-1, at 6. The record contains information regarding settlement talks to dismiss Kenny beginning at least on December 12, 2005. Dkt. 234-2. Quantz and the Defendants were unable to come to an agreement on the conditions of Kenny's dismissal. *Id.* Defendants wanted a full dismissal of Kenny and the County in exchange for a dismissal of Kenny's counterclaim. *Id*. Quantz wanted to dismiss Kenny and Kenny's counterclaim, but keep the County in the suit. *Id.* In any event, Quantz was free to voluntarily dismiss Kenny, defendants unwillingness to enter into a stipulation notwithstanding. It is apparent that Quantz's claims against Kenny were clearly meritless and frivolous after October 18, 2005, so as to warrant sanctions under §§ 1988 and 1927.

3. Reasonableness of Attorneys' Fees

Kenny has requested attorney's fees of $7,408.00 and costs of $89.56 which were incurred after Edwards' October 18, 2005 deposition. The Court now considers whether Kenny's fee request is reasonable.

In determining what attorney's fee is reasonable in a particular case, the court arrives at the "lodestar amount" by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Jordan v. Multnomah County,* 799 F.2d 1262, 1265 (9th Cir. 1986)(*quoting Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). Once the number of reasonable hours is determined,

the district court must set a reasonably hourly rate considering the experience, skill, and reputation of the attorney requesting fees.

In reviewing a claim for attorney's fees, the court should consider the following factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied,* 425 U.S. 951 (1976). These considerations are consistent with Washington Rules of Professional Conduct 1.5.

The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *Gates v. Gomez,* 60 F.3d 525, 534-5 (9th Cir. 1995). The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits. *Id.*

*Time and labor:* Kenny and Thurston County were represented by Dale Kamerrer of Law, Lyman, Daniel, Kamerrer & Bogdanovich, P.S. Dkt. 232. Kamerrer divided the total hours he spent defending the county and Kenny in half, in order to represent Kenny's share. *Id*. After Edward's deposition on October 18, 2005, and before the summary judgment order dismissing Kenny, Kamerrer expended 46.3 hours attending depositions, conferring with opposing counsel and co-counsel, drafting Kenny's motion for summary judgment and drafting Kenny's summary judgment reply. *Id.* He billed Kenny $160.00/hour. *Id.* He applied his rate to the amount of time spent on the case, and arrived at lodestar amounts. The time Kamerrer spent on Kenny's behalf was not duplicative or redundant. The number of hours Kamerrer spent on Kenny's behalf was reasonable.

*Novelty of the case and requisite skill:* The allegations against Kenny presented somewhat novel issues and required moderate skill.

*Preclusion of other employment, customary fee, nature of fee*: Acceptance of this case did not unduly preclude employment in other cases for other clients. Kamerrer charged Kenny his customary fixed fee of $160.00, which is less than the average charged for attorneys' fees in this region.

*Time limitations, amount involved and results obtained*: There is no evidence in the record as to time limitations imposed by the client or the circumstances. The amount involved in the case was unknown. Kamerrer was able to obtain full dismissal of Kenny pursuant to the Summary Judgment motion.

*Experience, reputation, and ability of the attorneys, and nature and length of the professional relationship:* Kamerrer has experience trying over 20 civil actions to either verdict or judgment since his admission to practice in Washington in 1979. Dkt. 232, at 3. He has an good reputation and has shown skill and ability in this case. Motions filed by Kamerrer met the standards the Court expects from experienced attorneys in this region. There is no evidence in the record of his relationship with Kenny.

*Undesirability of the case, and awards in similar cases*: This case is neither undesirable nor desirable. There was no evidence presented as to awards in similar cases. However, in *Chalmers*, a case decided almost twenty years ago, the Ninth Circuit approved a $175.00/hour fee for work on a Section 1983 claim. *Chalmers,* 796 F.2d 1215.

Considering the above, Kamerrer's hourly rate is reasonable as was the time he spent on Kenny's behalf. Kenny is entitled to an award of $7,408.00 in attorneys' fees and costs of $89.56 which were incurred after Edwards' October 18, 2005 deposition.

**D. Defendants' Motion for Attorneys' Fees and Expenses Due to Mistrial**

Defendants move for an order granting judgment against Quantz and his attorney for attorneys' fees and expenses incurred for the one and one-half day of trial which resulted in a mistrial. Dkt. 242. Defendants' motion for mistrial was granted based upon Quantz's attorney's references, in opening statements, to claims and theories of liability that were dismissed pursuant

to Defendants' motions for summary judgment. Further, the motion for mistrial was granted because Quantz's attorney referred to evidence which had been restricted by the Orders on motions *in limine*.

Local Civil Rule 43(h)(1) provides that "[i]n the trial of an action the party having the affirmative of the issue shall open the cause by stating generally what he expects to prove." Under General Rule 3(d),

> An attorney or party who without just cause fails to comply with any of the Federal Rules of Civil or Criminal Procedure, or these rules, or orders of the court, . . . or fails to prepare for presentation to the court, or who otherwise so multiplies or obstructs the proceedings in a case as to increase the cost thereof unreasonably and vexatiously, may, in addition to, or in lieu of the sanctions and penalties provided elsewhere in these rules, be required by the court to satisfy personally such excess costs, and may be subject to such other sanctions as the court may deem appropriate.

Extra attorneys' fees and costs (only those incurred as a result of the mistrial), should be awarded against Quantz's attorney for his unreasonably and vexatiously multiplying the proceedings. Quantz did not cause a mistrial, so sanctions against him are not appropriate. After extensive discussion of the remaining issues and evidence in the orders on the motions for summary judgment, (*See e.g.* Dkt. 128), in the orders on the motions *in limine*, and during the pretrial conference, Quantz's attorney, in opening statement, repeatedly and improperly referred to evidence and theories of liability which were no longer a part of the case in his opening statement. The only recourse left to the Court was to declare a mistrial. Due to the unreasonable willful disregard of the Court's orders, a sanction against Quantz's attorney is appropriate. Defendants' motion should be granted.

Defendants have requested $7,192.00 in attorneys' fees and $109.00 in expenses as a sanction due to the mistrial. Dkts. 243, 244, and 245. This amount is based on time spent on the case that would not have been necessary had the mistrial not occurred. This opinion will now examine the *Kerr* factors to determine if this request is reasonable.

*Time and labor:* Defendants are represented by Colleen Kinerk and Steven Kerr of Cable, Langenbach, Kinerk & Bauer, and Dale Kamerrer of Law, Lyman, Daniel, Kamerrer & Bogdanovich, P.S. The attorneys seek fees for time wasted because of the mistrial and for

preparation of this motion. Dkts. 242-245. The attorneys billed their clients at the following rates: 1) $155.00/hour for Colleen Kinerk, 2) $155.00/hour for Steven Kerr, and 3) $160.00/hour for Dale Kamerrer. *Id.* The attorneys applied their usual rates to the amount of time each spent on the case, and arrived at lodestar amounts for each attorney. The record indicates that the time each spent on the first trial and the motion for mistrial was not duplicative or redundant. The number of hours spent are reasonable.

*Novelty of the case and requisite skill:* This case presented somewhat novel legal issues and required moderate skill. However, these factors are not heavily considered because trial preparation would have been the same in any event.

*Preclusion of other employment, customary fee, nature of fee*: Acceptance of this case did not unduly preclude employment in other cases for other clients. Colleen Kinerk charged $155.00/hour, which is less than her standard rate of $250.00/hour. Dkt. 244-1, at 2. Steven Kerr charged $155.00/hour, which is less than his standard rate of $175.00/hour. Dkt. 245, at 3. Kamerrer charged his customary fixed fee of $160.00/hour, which is less than the average charged for attorneys' fees in this region. Dkt. 243, at 2.

*Time limitations, amount involved and results obtained*: There is no evidence in the record as to time limitations imposed by the client or the circumstances. The amount involved in the case was unknown. In the end, these attorneys were able to obtain the mistrial sought.

*Experience, reputation, and ability of the attorneys, and nature and length of the professional relationship:* Kinerk was admitted to the Washington bar in 1977, (Dkt. 244-1 at 2) Kerr in 2001 (Dkt. 245 at 3) and Kamerrer in 1978 (Dkt. 232 at 3). All of these attorneys have good reputations in the community. Each has shown skill and ability in this case. All of these attorneys have conducted themselves consistent with the standards the Court expects from experienced attorneys in this region. There is no evidence in the record of their relationships with their clients.

*Undesirability of the case, and awards in similar cases*: This case is neither undesirable nor desirable. There was no evidence presented as to awards in similar cases. Again, pursuant to

the Ninth Circuit's finding in *Chalmers*, $160.00/hour and $155.00/hour fees for work on a Section 1983 claim is reasonable. *Chalmers,* 796 F.2d 1215.

Considering the above, the attorneys' hourly rates are reasonable. The time Kinerk, Kerr, and Kamerrer spent on the first trial and motion for mistrial is reasonable. Defendants are entitled to an award of $7,192.00 in reasonable attorneys' fees and $109.00 in expenses as a sanction due to the mistrial.

## IV. ORDER

Therefore, it is hereby**, ORDERED** that:

- Defendant Gary Edwards' Renewed Motion for Judgment *Non Obstante Veredicto* Pursuant to Fed. R. Civ. P. 50(b) (Dkt. 238-1) is **GRANTED**, and Edwards' alternative motion for a new trial (Dkt. 238-1) is **DENIED AS MOOT**. Defendant Edwards is entitled to a judgment of dismissal, and costs to be taxed by the Clerk,
- Plaintiff's Motion for Attorneys' Fees and Costs under 42 U.S.C. § 1988 (Dkt. 240) is **DENIED AS MOOT**,
- Plaintiff's Motion to Dismiss Defendant William "Bill" Kenney's Counterclaim for 28 U.S.C. § 1927 Sanctions (Dkt. 207) is **DENIED**,
- Motion of Defendant William Kenny for an Award of Attorney's Fees and Expenses (Dkt. 231) **GRANTED**, Kenny is awarded attorney's fees of $7,408.00 and costs of $89.56 against Quantz's attorney,
- Motion of Defendants for Attorneys' Fees and Expenses Due to Mistrial Caused by Plaintiff's Attorney (Dkt. 242) is **GRANTED**. Defendants are awarded $7,192.00 in reasonable attorneys' fees and $109.00 in expenses against Quantz's attorney as a sanction due to the mistrial.

• The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 5th day of May, 2006.

Robert J. Bryan
United States District Judge